# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| PEARLIE SANDIDGE o/b/o A.J., a minor child, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:15-CV-6 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Pearlie Sandidge ("Sandidge"), on behalf of A.J., a minor child, challenges the final decision of the Commissioner of Social Security ("Commissioner") finding A.J. not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Sandidge alleges that the Administrative Law Judge ("ALJ") erred by finding that A.J. has less than marked limitations in the domains of moving about and manipulating objects and health and well being. I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15), and **DENYING** Sandidge's Motion for Summary Judgment (Dkt. No. 13).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that A.J. was not disabled under the Act.[1] Mastro v.

---

[1] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

1

Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Sandidge, on behalf of A.J., filed for SSI on September 7, 2011, claiming that A.J.'s disability began on May 6, 1998 (her birthdate), due to bilateral clubfeet. R. 128–45. At the time Sandidge filed for SSI, A.J. was 13 years old and at the time of the ALJ's decision, A.J. was 15 years old. R. 12, 128. The state agency denied Sandidge's application at the initial and reconsideration levels of administrative review. R. 47–65. On October 29, 2013, ALJ Marc Mates held a hearing to consider Sandidge's disability claim on behalf of A.J. R. 27–46. Counsel represented A.J. at the hearing, which included testimony from Sandidge, who is A.J.'s mother.

On December 23, 2013, the ALJ entered his decision analyzing Sandidge's claim under the three-step process,[2] and denying Sandidge's claim for disability. R. 9–26. The ALJ found that A.J. suffered from the severe impairment of bilateral clubfeet. However, the ALJ concluded

---

[2] The Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 416.924(a), (b). Next, the ALJ must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. 20 C.F.R. § 416.924(a), (c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function. 20 C.F.R. § 404.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to step three where the ALJ must consider whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a), (d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

2

that this impairment did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16. In making this determination, the ALJ specifically considered "101.02 discuss[ing] impairment of a major peripheral weight-bearing joint, which results in an inability to ambulate effectively. Id.

When evaluating whether a minor's severe impairment functionally equals a listed condition, the ALJ must consider six relevant domains[3] of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). Here, after considering the six functional domains, the ALJ concluded that A.J.'s impairment of clubfeet was not functionally equivalent to a listed condition. R. 16–26. Functional equivalence is defined as an impairment of listing-level severity. For example, it must result in "marked" limitations in two domains of functioning, or result in an "extreme" limitation in one domain.[4] 20 C.F.R. § 416.926a(a).

The ALJ concluded that A.J. had "no limitation" in the domains of acquiring and using information and interacting and relating with others, and "less than marked limitation" in attending and completing tasks and moving about and manipulating objects. R. 22–25. Accordingly, the ALJ found that A.J. does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. Id. Thus, the ALJ concluded that A.J. was

---

[3] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

[4] 20 C.F.R. § 416.926a(e)(2)(i) defines "marked" limitation as "more than moderate" but "less than extreme." A minor has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. Extreme limitation is defined as "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

3

not disabled. Sandidge appealed the ALJ's decision, and on February 10, 2015, the Appeals Council denied her request for review. R. 1–5. This appeal followed.

## ANALYSIS

Sandidge contests the ALJ's finding that A.J. did not functionally equal the listings; specifically, the ALJ's conclusion that A.J. has "less than marked" limitations in the domains of moving about and manipulating objects and health and well being.

A.J. was born with bilateral clubfeet and underwent several procedures throughout the years related to this condition. R. 346. In May 2010, A.J. had surgery to reduce supination of her left forefoot. R. 305. A.J. followed up with Mark Romness, M.D., after the surgery and complained of occasional medial sided foot pain along the length of the incision with activity. R. 271. A.J. reported no limitation with her activities and no need for pain medication. Dr. Romness noted that A.J. wore custom arch supports bilaterally. Id.

On November 17, 2011, A.J. underwent a consultative examination with Richard Morris, M.D. R. 277–79. Dr. Morris noted that A.J. was born healthy, aside from bilateral clubfeet. She was initially casted in Roanoke and had five subsequent operations at University of Virginia. During her visit, A.J. reported pain with walking in her left foot, especially after her most recent surgery. She complained of pain when jumping more than a few inches off the floor and walking long distances. She reported some discomfort at school, but had no difficulty going up and down stairs at home and loved to shop at the mall. A.J. also reported making good grades at school, having good friendships, helping with housework at home, sleeping and eating well. She was able to care for herself and meet her grooming, dressing and bathing needs. Dr. Morris noted, "[s]he does not see herself as having limitations other than not being able to do sports or walking for long periods of time in the fact that she is in some pain." Id.

4

On physical examination, Dr. Morris noted that A.J. was normal other than below her calves. R. 278. Her left calf muscle was abnormal and small, and her left ankle had a limited range of motion less than 90 degrees. Id. She was somewhat tender over her surgical rod insertion site on the left medial proximal foot. R. 279. Dr. Morris noted that A.J. was able to get from supine to sitting with no problem. Id. She came off the exam table gingerly, initially putting weight on her left foot first, but did well getting back onto the exam table. Id. She was able to do a deep knee bend, but was somewhat slow and a little asymmetric, with more use of her right leg than left. Id. Her gait was almost normal, and seemed to be somewhat stiff-footed on the left but no obvious limp. Id.

A.J. visited the University of Virginia's pediatric orthopedic department on February 20, 2012, complaining of worsening left medial foot pain with weight bearing. R. 294. A.J. reported that she was "limping all the time." Id. Leigh Ann Lather, M.D., reviewed A.J.'s x-rays and determined that there was no discernible change in the area of her screw fixation or alignment of her left foot. R. 295. Dr. Lather concluded that A.J.'s pain was due to unequal distribution of pressure through the foot with weight bearing, and recommended custom foot orthotics. Id. On March 13, 2012, A.J. visited the University of Virginia seeking better support for her feet. R. 293–94. A.J. reported that her shoes were too small for her to wear the inserts, and she was advised to begin working with her new orthotics on an intermittent trial basis. R. 293.

On December 24, 2012, A.J. visited the pediatric orthopedic clinic and reported pain in her left foot that is not helped by inserts. R. 349. Dr. Romness determined that a non-union at the talonavicular area may be the source of A.J.'s complaints and recommended adjustments to her shoe orthotics and considering realignment surgery if she did not see significant improvement. R. 351. Dr. Romness also restricted A.J.'s running and jumping in gym. Id. On

5

August 2, 2013, A.J. underwent a procedure to repair the nonunion of her left talonavicular arthordesis. R. 325. A.J. made progress thereafter with daily physical therapy sessions, and during a follow up appointment with Dr. Romness, A.J. reported no problems with the cast, no new issues and that she discontinued using pain medication. R. 364. A.J. followed up again on September 10, 2013, and reported no problems with the cast and no new issues. R. 362.

At the administrative hearing a month later, A.J. testified that she is doing "fairly well" in school and takes pain medication as needed. R. 32. On a typical day, A.J. rides the bus to school, attends regular classes, has friends at school, and washes dishes at home. A.J. testified that she likes to draw, listen to music, and read historical fiction. R. 33–35. A.J. stated that she is permitted to leave class early at school to allow additional time to walk to her next class, and visits the nurse about every other day. R. 36. The only class she does not participate in is gym. R. 37. A.J. testified that she sometimes has trouble getting assignments finished because when she comes home she is tired and takes a nap. R. 39. A.J.'s mother testified that A.J. wants to play sports and cannot and complains about the pain in her feet "every once in a while." R. 43.

With regard to medical opinion evidence, on January 9, 2012, state agency physician Joseph Duckwall, M.D., reviewed A.J.'s records and determined that she had no limitation with the domains of acquiring and using information, caring for yourself, and health and physical well-being; and less than marked limitations in attending and completing tasks, interacting and relating with others, and moving about and manipulation of objects. R. 50–52. With regard to moving about and manipulating objects, Dr. Duckwall noted:

> The child has a history of bilateral clubfoot. She has had multiple surgeries. In 11/11 it was stated that she has some discomfort at school. However, she has no difficulty going up and down stairs at home and loves to go to the mall to shop. It was stated she does wear gel pads in her shoes. She also has a history of physical therapy on 12 separate occasions for therapy. It was stated in her exam that her gait was almost normal.

6

R. 51. With regard to health and physical well-being, Dr. Duckwall noted that despite multiple surgeries and physical therapy, A.J. had an almost normal gait and was somewhat stiff-footed on the left but had no obvious limp. R. 52. On April 13, 2012, state agency pediatrician Richard Surrusco, M.D., reviewed A.J.'s records and agreed with Dr. Duckwall's findings. R. 60–61.

On October 11, 2011, A.J.'s language arts teacher, Catherine Campbell, completed a teacher questionnaire and reported that she sees A.J. for an hour and forty minutes every day of the week. R. 146. Ms. Campbell found that A.J. has no problems acquiring and using information. R. 148. She reported that A.J. does have problems with attending and completing tasks; specifically, with not completing her homework assignments. Ms. Campbell noted that A.J. reported that she has "chores to do" which prevent her from doing assigned work. R. 148. Ms. Campbell found that A.J. had no problems in the domains of interacting and relating with others, moving about and manipulating objects, or caring for herself. R. 153–54. With regard to heath and physical well being, Ms. Campbell wrote "[A.J.] appears to have no physical conditions which inhibit her in Language Arts 8 classes." R. 155.

### A. Moving About and Manipulating Objects

The domain of moving about and manipulating objects considers how a claimant moves her body from one place to another and how she moves and manipulates things. 20 C.F.R. § 416.926a(j). For example, the regulations state that adolescents such as A.J. should be able to use motor skills freely and easily to get about school, the neighborhood, and the community; should be able to participate in a full range of individual and group physical fitness activities; show mature skills in activities requiring eye-hand coordination; and have the fine motor skills necessary to write efficiently or type on a keyboard. Id. Examples of difficulty moving about and manipulating objects include: muscle weakness, joint stiffness or sensory loss that interferes

7

with motor activities, such as unintentionally dropping things; trouble climbing up and down stairs; having jerky or disorganized locomotion or difficulty with balance; difficulty coordinating gross motor movements such as bending, kneeling, crawling, running, jumping rope or riding a bike; difficulty with sequencing hand or finger movements; difficulty with fine motor movement; poor eye-hand coordination when using a pencil or scissors. 20 C.F.R. § 416.926a(j)(3).

In assessing a child's degree of limitation in any given domain, the ALJ must utilize the "whole child" approach, which requires considering "how well the child can initiate, sustain, and complete activities" and evaluating "the kind, extent, and frequency of help or adaptations the child needs, the effects of structured or supportive settings on the child's functioning, where the child has difficulties (at home, at school, and in the community), and all other factors that are relevant." SSR 09–1 p, 2009 WL 396031 (citing 20 C.F.R. § 416.924a).

Here, the ALJ reviewed A.J.'s medical records, the testimony of A.J. and her mother, and the report of Ms. Campbell. The ALJ recognized that A.J. has a history of surgeries for her bilateral clubfeet, walks with a limp, requires extra time to walk to class at school and cannot run, swim, drive a car, or play sports. R. 24. However, the ALJ noted that A.J. is able to perform a variety of physical activities, and can dance, ride a bike, throw a ball, jump rope, and use video game controls. Id. The ALJ also noted that Dr. Morris described A.J.'s gait as "almost normal" and despite being stiff-footed on the left, she had no obvious limp in 2011. Id.

Sandidge argues that the ALJ's conclusion is not supported by substantial evidence because A.J. has "marked" difficulties moving about, evidenced by her special accommodations at school to walk to classes, her inability to participate in gym class and inability to play any sports. Pl. Br. Summ. J. p. 13. Sandidge asserts that the ALJ erred by considering certain activities that she can do, such as throwing a ball and using video game controls, because those

8

activities require upper extremities. Sandidge also asserts that the ALJ erred by relying upon the opinion of consultative examiner Dr. Morris because his examination was two years prior to the ALJ's decision. Pl. Br. Summ. J. p. 14.

I find that the ALJ's conclusion that A.J. had less than marked limitation in the domain of moving about and manipulating objects is supported by substantial evidence. The evidence reveals that A.J.'s bilateral clubfeet did not seriously interfere with her ability to initiate, sustain or complete activities independently. The evidence revealed that A.J. was capable of going up and down stairs independently, shopping at the mall, dancing, riding a bike, throwing a ball, and jumping rope. R. 24, 172. A.J.'s teacher, who saw her on a daily basis, observed that she had no difficulty with regard to this domain. R. 152. Drs. Duckwall and Surrusco reviewed A.J.'s records and found that A.J. had less than marked limitation in this domain. R.50–52, 60–61. A.J.'s recent medical records revealed that after her most recent surgery she reported no new problems and was not using pain medication. R. 362.

Thus, A.J.'s physical findings, education records, testimony and mother's reports support the ALJ's conclusion that she had less than marked limitations in the domain of moving about and manipulating objects. See Mitchell ex rel. Dabney v. Astrue, No. 4:10cv28, 2011 WL 2604833, at *4 (W.D. Va. Apr. 11, 2011) (Substantial evidence supports ALJ's finding of no limitation in domain of moving about and manipulating objects where child can run, walk, throw a ball, ride a bike, jump rope, use scissors, work video game controls, and dress/undress dolls or action figures.); Mowbray v. Astrue, No. 6:07-819-JFA-WMC, 2008 WL 4198408, at *14 (D.S.C. Sept. 2, 2008) (Substantial evidence supports ALJ's finding of no marked limitation in domain of moving about and manipulating objects where child had problems managing the pace of physical activities and integrating sensory input with motor output but had no problem moving

9

from one place to another, moving and manipulating things, demonstrating strength, coordination and dexterity in activities, and showing a sense of his body's location and movements in pace.); Lavigne ex rel. F.L. v. Barnhart, No. 705cv43; 2006 WL 318610, at *5 (W.D. Va. Feb. 8, 2006) (Substantial evidence supports ALJ's finding of no marked limitation in domain of moving about and manipulating objects where child was excused from physical education due to asthma and has limited physical ability but she can lift, pull, carry objects; get to school; use pens, pencils and tools; has good energy level; and no musculoskeletal symptoms.).

### B. Health and Well Being

The domain of health and well being considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the claimant's functioning. 20 C.F.R. § 416.926a(I). Examples of limitations in health and physical well-being are weakness, dizziness, agitation, lethargy, seizures, headaches, incontinence, recurrent infections, nausea; as well as limitations arising due to treatment such as chemotherapy, multiple surgeries, and nebulizer treatments. Id.

Sandidge argues that A.J. has a marked limitation in the domain of health and well being because she takes Oxycodone for pain as needed, is unable to participate in extracurricular activities, gets tired from school and naps in the afternoon, is self-conscious about her feet, limps, and thus her "existence is markedly different from that of her peers" at both a physical and mental level. Pl. Br. Summ. J. p. 16. Sandidge's argument simply cites the portions of the record that she claims support a finding of marked limitations and states that the ALJ's findings are not supported by substantial evidence. This is no basis for remand. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's

10

decision is supported by substantial evidence. So long as this standard— defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Here, substantial evidence supports the ALJ's finding that A.J. had less than a marked limitation in the domain of health and well being. The ALJ noted that aside from recovering from her most recent surgery, the only restriction placed on A.J. by her doctor was to refrain from jumping and running during gym class. R. 26. The ALJ also noted that A.J. seemed to be recovering well from her surgery and had not required pain medication recently. Id Likewise, Drs. Duckwall and Surrusco both found that A.J. had less than marked limitation in this domain, and A.J.'s teacher found no limitation in this domain. Despite needing extra time to get to class and being restricted from running and jumping in gym class, A.J. reported functioning well in school, helping at home, and engaging in other activities typical for an adolescent such as shopping at the mall. Further, A.J. told Dr. Morris that, "[s]he does not see herself as having limitations other than not being able to do sports or walking for long periods of time in the fact that she is in some pain." R. 277. Thus, the ALJ's conclusion that A.J. has less than marked limitation with the domain of health and well being is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to

counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

    Entered: August 2, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge